## LEE v. VICTORY INDUSTRIAL LIFE INS. CO.

### No. 16869.

Court of Appeal of Louisiana. Orleans.

June 13, 1938.

Titche & Titche, of New Orleans, for appellant.

Chas. I. Denechaud, Chas. I. Denechaud, Jr., and Ernest J. Robin, all of New Orleans, for appellee.

JANVIER, Judge.

This is a suit by the designated beneficiary for an amount alleged to be due on two life insurance policies issued on the life of William Lee, who died on June 1, 1937. Defendant company admits all of

the allegations of the petition except as to the death of the insured, and, in fact, no controversy is now made over that issue. But it interposes the special defense that the insured came to his death as the result of a violation of law. In setting up this defense, it relies upon a policy provision which, in almost identical language, appears in each of the policies. In one it is written as "Condition No. 2" and it provides that " * * * death benefits will not be paid * * * at any time for death resulting from violation of law, · * * * ".

Defendant admitted liability for the return of the premiums which had been paid and averred that it had tendered the amount of these premiums, but that the amount tendered had been returned.

In the court a qua there was judgment for plaintiff for $34.30, the amount of the premiums admittedly due. From this judgment plaintiff has appealed.

Defendant, conceding that the burden of establishing the special defense rested on it, called to the stand two witnesses, Lawrence Patania and Steve Pollizzi, the former of whom stated that Lee had engaged in an altercation with him because of vile epithets hurled at him by Lee, and that, following this, Lee had made an aggressive gesture towards him and had evidenced an intention to draw a weapon upon him; that he had grasped Lee in an effort to prevent his being injured and that the two had fallen and that Lee had evidently been injured in the fall to such an extent that he died shortly afterwards. Pollizzi, to some extent, corroborates the statement of Patania.

Counsel attacks the testimony of these two witnesses, contending that the one does not agree with the other in certain details and that Patania's testimony itself contains contradictions and alterations of detail which render it impossible to be accorded credence. It is true that Patania, in repeating several times the vile epithets which he says Lee hurled at him, used different words at each repetition, but he shows that when Lee was cursing him, he continued to do so for some little time, and it is possible that Lee used all the various epithets which Patania attributes to him and that Patania, in relating the affair, repeated one or more of them on one occasion and others on the other occasions, and we do not think that this alteration in his repetition of the conversation makes it necessary that we say that he was falsifying in his testimony.

The same may be said concerning Pollizzi's description of the verbal affray, for he attributed to Lee still other language. · The important fact to which Patania testifies is that, after Lee had cursed him and he had procured a stick to strike Lee, he dropped the stick when it appeared that the matter had terminated, and that it was only after this apparent termination of the controversy that Lee recommenced hostilities by making threatening gestures as though he intended to draw some weapon from his pocket. Pollizzi corroborates Patania's statement that he (Patania) had dropped the stick and had ceased hostilities when Lee made the further attack or aggressive gesture.

Though there are many things concerning the affair which tend to throw suspicion on the evidence of these two witnesses, we must remember that the trial judge saw them and apparently believed them. We feel that, even though there may be in our minds some slight doubt as to the truthfulness of these two men and although the burden of proving the special defense was upon the defendant, still the finding of the court below makes it necessary that we allow the judgment rendered to stand. The presumption of the correctness of that judgment is not overcome by the slight doubt of the truthfulness of these witnesses. Our brother below having concluded that Lee's death resulted from his aggressive gesture and from the apparent attempt on his part to attack Patania, we cannot say that his conclusion was obviously erroneous.

While the point has not been seriously argued, we feel that, if Lee did make the threatening gesture after hurling at Patania the vile epithets attributed to him, in doing so he violated the law within the contemplation of the policy stipulation.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.